ADAM R.F. GUSTAFSON, Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
READE E. WILSON, Trial Attorney (ME Bar No. 4992)
CHRISTIAN H. CARRARA, Trial Attorney (NJ Bar No. 317732020)
Natural Resources Section, Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0299 (Wilson)
Tel: (202) 305-0217 (Carrara)
Fax: (202) 305-0275
Email: reade.wilson@usdoj.gov
Email: christian.carrara@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Lead Case No. 9:23-cv-110-DLC-KLD |
| Plaintiffs, | |
| and | Member Case No. 9:23-cv-00154-DLC-KLD |
| GALLATIN WILDLIFE ASSOCIATION, et al., | |
| Consolidated Plaintiffs, | FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION |
| v. | |
| U.S. FOREST SERVICE, et al., | |
| Federal Defendants, | |
| and | |

SUN MOUNTAIN LUMBER, INC.,

Defendant-Intervenor.

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

STANDARD OF REVIEW ....................................................................................1

ARGUMENT .........................................................................................................2

    I.      The Magistrate Judge Correctly Rejected Plaintiffs' NEPA
          Claims...........................................................................................2

          A.     USFS's Grizzly Bears Effects Analysis Complied with
                NEPA..............................................................................4

          B.     USFS's Cumulative Effects Analysis Complied with
                NEPA..............................................................................6

          C.     USFS's Climate Analysis Complied with NEPA.........................9

          D.     USFS Complied with NEPA by Completing an EA .................11

    II.     The Magistrate Judge Correctly Rejected Plaintiffs' NFMA
          Claims.........................................................................................13

          A.     USFS's Decision Is Consistent with Grizzly Bear
                Standards......................................................................14

                    1.     USFS's Decision Is Consistent with the 1%
                          Standard ...........................................................15

                    2.     USFS's Decision Is Consistent with the Temporary
                          Roads Standard .................................................21

           B.     USFS's Decision Is Consistent with Lynx Standards...............22

    III.    The Magistrate Judge Correctly Rejected Plaintiffs' ESA Claims .....24

          A.     The Secure Habitat Standards Comply with the ESA ..............25

          B.     FWS's Grizzly Bears Effects Analysis Complied with the
                ESA ..............................................................................26

       1.      FWS's Jeopardy Determination Is Supported by the Record and Entitled to Deference...................................27

       2.      FWS Properly Considered the Design Features as Integral Parts of the Project ...........................................30

       3.      FWS's Action Area Is Supported by the Record and Entitled to Deference .....................................................31

CONCLUSION ...............................................................................33

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*All. for the Wild Rockies v. Kreuger*,
   950 F. Supp. 2d 1196 (D. Mont. 2013)..................................................................25

*Ctr. for Biological Diversity v. Bernhardt*,
   982 F.3d 723 (9th Cir. 2020) .............................................................................30

*Ctr. for Biological Diversity v. United States Forest Serv.*,
   687 F. Supp. 3d 1053 (D. Mont. 2023)...............................................................10

*Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*,
   18 F.4th 592 (9th Cir. 2021) .............................................................................11

*Env't Prot. Info. Ctr. v. United States Forest Serv.*,
   451 F.3d 1005 (9th Cir. 2006) ...........................................................................12

*Friends of the Wild Swan v. Weber*,
   767 F.3d 936 (9th Cir. 2014) ................................................... 7, 8, 31, 33

*Gifford Pinchot Task Force v. United States Fish & Wildlife Serv.*,
   378 F.3d 1059 (9th Cir. 2004) ...........................................................................27

*Hapner v. Tidwell*,
   621 F.3d 1239 (9th Cir. 2010) .............................................................................9

*Idaho Conservation League v. Thomas*,
   91 F.3d 1345 (9th Cir. 1996) .............................................................................26

*Josifov v. Al-Hafev*,
   No. CV 22-121-BLG-SPW, 2025 WL 262598 (D. Mont. Jan. 22, 2025)..........1, 2

*Karuk Tribe of Cal. v. United States Forest Serv.*,
   681 F.3d 1006 (9th Cir. 2012) ...........................................................................27

*Kettle Range Conservation Grp. v. United States Forest Serv.*,
   No. 2:21-CV-00161-SAB, 2023 WL 4112930 (E.D. Wash. June 21, 2023)..........5

*Klamath-Siskiyou Wildlands Ctr. v. United States Fish & Wildlife Serv.*,
   No. 1:20-CV-00952-AA, 2022 WL 4599259 (D. Or. Sept. 30, 2022).................28

*McDonnell Dougals Corp. v. Commodore Bus. Machs., Inc.*,
656 F.2d 1309 (9th Cir. 1981) ...............................................................................2

*Melvin v. Lake Cnty. Sheriff's Office*,
No. 23-cv-136-M-DLC, 2024 WL 2059061 (D. Mont. May 8, 2024)...............1, 2

*N. Cascades Conservation Council v. United States Forest Serv.*,
No. 24-1422, 2025 WL 1273321 (9th Cir. May 2, 2025)......................................4

*Native Ecosystems Council v. Dombeck,*
304 F.3d 886 (9th Cir. 2002) .............................................................................32

*Native Ecosystems Council v. United States Forest Serv.*,
428 F.3d 1233 (9th Cir. 2005) ............................................................................11

*Neighbors of Cuddy Mountain v. Alexander*,
303 F.3d 1059 (9th Cir. 2002) ..............................................................................9

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
957 F.3d 1024 (9th Cir. 2020) ...................................................................... 14, 21

*Rocky Mountain Wild v. United States Fish & Wildlife Serv.*,
No. CV 13-42-M-DWM, 2014 WL 7176384 (D. Mont. Sept. 29, 2014) ............29

*Selkirk Conservation All. v. Forsgren*,
336 F.3d 944 (9th Cir. 2003) ................................................................................8

*United States v. Reyna-Tapia*,
328 F.3d 1114 (9th Cir. 2003)...............................................................................2

**Statutes**

28 U.S.C. § 636(b)(1)............................................................................................1

**Regulations**

36 C.F.R. § 212.1 ................................................................................................21

36 C.F.R. § 220.3 ................................................................................................13

INTRODUCTION

In accordance with Local Rule 72.3(b), Federal Defendants respond to Plaintiffs' Objections to the Magistrate Judge's Findings and Recommendation ("F&R"), ECF No. 69. The Court should adopt Magistrate Judge DeSoto's well-reasoned F&R, grant summary judgment in favor of Federal Defendants on all claims, and dismiss Plaintiffs' claims with prejudice.

STANDARD OF REVIEW

Pursuant to the Federal Magistrates Act, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Local Rule 72.3 requires an objecting party to "itemize" each factual finding and recommendation to which they object and identify record evidence and authority that contradicts that finding or recommendation. Mont. L.R. Civ. 72.3(a). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate . . . . Objections are not a vehicle for the losing party to relitigate its case." *Josifov v. Al-Hafev*, No. 22-cv-121-BLG-SPW, 2025 WL 262598, at *2 (D. Mont. Jan. 22, 2025) (cleaned up). A party is entitled to *de novo* review only to "those findings and recommendations to which he has specifically and properly objected." *Melvin v. Lake Cnty. Sheriff's Office*, No. 23-cv-136-M-DLC, 2024 WL 2059061, at *1 (D. Mont. May 8, 2024)

1

(citing 28 U.S.C. § 636(b)(1)(C)); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)). "Absent a proper objection, the Court reviews findings and recommendations for clear error." *Id.* at *2 (citing *McDonnell Dougals Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981)).

## ARGUMENT

The Court should review the F&R only for clear error because Plaintiffs have not specifically and properly objected to the Magistrate Judge's findings or recommendations. *Josifov*, 2025 WL 262598, at *2; *Melvin*, 2024 WL 2059061, at *1. Instead, Plaintiffs attempt to relitigate this case by restating their summary judgment arguments. Center for Biological Diversity, et al.'s Obj. to Findings and Recommendations, ECF No. 72 ("CBD Obj."); Obj. to Magistrate's Findings and Recommendations, ECF No. 73 ("Gallatin Obj."). Further, Plaintiffs in the lead case, Center for Biological Diversity, et al. ("CBD"), fail to itemize their objections as required by the local rules. Regardless, the record is clear that Federal Defendants complied with the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), and the Endangered Species Act ("ESA"), and the Court should adopt the F&R in full.

I.    The Magistrate Judge Correctly Rejected Plaintiffs' NEPA Claims.

USFS complied with NEPA by analyzing the maximum potential environmental effects as if all treatments and temporary roads were implemented

2

and on the ground at the same time. SP_004364 ("Analysis was based on the project maximum extent."); SP_041089 (noting the mapped "set of temporary routes is generally considered the 'worst case' scenario"). The analysis was site-specific, as shown on the map identifying areas suitable for treatment:



SP_004339. And the record includes maps showing (1) priority treatment areas, SP_004345; (2) expected locations for temporary roads and their impact to secure habitat, SP_041205; and (3) the preliminary layout of the first two timber sales, SP_006168. The Ninth Circuit recently upheld this type of maximum effects

analysis under NEPA. *N. Cascades Conservation Council v. U.S. Forest Serv.*, No. 24-1422, 2025 WL 1273321, at *8 (9th Cir. May 2, 2025) ("We conclude that the Forest Service's site-specific maximum effects analysis was sufficient here."), *aff'g in part* No. 2:22-cv-292, 2024 WL 188374 (E.D. Wash. Jan. 17, 2024).

Treatments and temporary roads will not be on the ground at the same time, however; and treatments may be reduced or dropped by applying binding Design Features. SP_004343-44; SP_041089 ("Because Design Features and other factors would reduce the amount of treatment that would occur in the project area, actual project impacts are expected to be lower than those presented here."). Binding Design Features limit the types of activities that are implemented as well as when and where they can be implemented. *Id.*; SP_004340; SP_004475. And Resource Checklists and mandatory reporting verify that each timber contract, alone and cumulatively, will not exceed the effects analyzed in the Environmental Assessment ("EA"). SP_004475; SP_004535.

A.    USFS's Grizzly Bears Effects Analysis Complied with NEPA.

USFS thoroughly considered the effects on grizzly bears, SP_004400-09; SP_041083-103, and concluded that the temporary displacement of individual bears would not be significant because of the temporary nature of the disturbance and the abundance of surrounding habitat and food sources. SP_004401; SP_041077-78 (noting studies showing no long-term impacts from intermittent

4

silviculture projects); *see also* Defs.' Mem. in Supp. of Cross-Mot. for Summ. J.,

ECF No. 55 ("Defs.' Mem.") at 42-45; Defs.' Reply in Supp. of Cross-Mot. for

Summ. J., ECF No. 61 ("Defs.' Reply") at 20-26.[1] The Magistrate Judge properly

concluded that "Defendants' position is clearly supported by [the] record."

Findings and Recommendation, ECF No. 69 ("F&R") at 54.

Member case Plaintiff Gallatin Wildlife Association, et al. ("Gallatin")

argues that the exact location of roads must be known to "meaningfully evaluate[]"

the effects on grizzly bears, citing *Kettle Range Conservation Group v. United

States Forest Service*, No. 2:21-CV-00161-SAB, 2023 WL 4112930, *9 (E.D.

Wash. June 21, 2023) (quoting FSH § 1909.15.01(1)). Gallatin Obj. at 27. But as

explained in Federal Defendants' reply brief, the court in *Kettle Range

Conservation Group* quoted the Forest Service Handbook out of context. Defs.'

Reply at 21. FSH section 1909.15.01(1) sets forth when a "proposal" for a major

federal action triggers NEPA. FSH § 1909.15.01 (zero code). There is no dispute

that this Project is subject to NEPA.

Regardless, USFS did not authorize 56 miles of temporary roads in a

vacuum. Based on current roads, GIS data, and field surveys, USFS identified

where temporary roads are likely to be needed to access treatment areas.

SP_004344. These roads are shown on maps in the record. *See* SP_041208;

---

[1] Page citations refer to the ECF page number.

SP_006168 (draft map of first two sales). USFS then analyzed the effects as if all the temporary roads were on the ground at the same time. SP_041089; SP_041205 (showing temporary impact to secure habitat). But the Project will be implemented through staged contracts, and the actual number of temporary roads constructed is expected to decrease. SP_041091. Further, the Decision decommissions several existing roads, thereby increasing the amount of secure habitat in the long-term. SP_004486. The Magistrate correctly concluded that "additional specificity would not meaningfully inform the analysis." F&R at 56. Plaintiffs fail to identify contrary record citations or caselaw.

B.     USFS's Cumulative Effects Analysis Complied with NEPA

The Project area lies at the intersection of three grizzly bear subunits, and USFS considered the cumulative effects of the Project on grizzly bears across all three subunits, totaling 368,598 acres. SP_041072.



SP_004402. A subunit represents a female grizzly's annual home range, and it "provide[s] the optimal scale for evaluation of seasonal feeding opportunities and landscape patterns of food availability[.]" SP_041072. The Ninth Circuit has upheld the use of a subunit, as opposed to the entire bear management unit ("BMU"), as the appropriate geographic scope for a cumulative effects analysis where it represents a female grizzly's annual home range. *Friends of the Wild Swan*

*v. Weber*, 767 F.3d 936, 944-45 (9th Cir. 2014). Considering the impacts across all three BMUs would just dilute the impacts. *Id.* at 945.

Plaintiffs argue that USFS should have expanded the geographic scope of the cumulative effects analysis to encompass the Yale Creek Project, citing *Selkirk Conservation Alliance v. Forsgren*, 336 F.3d 944, 958-59 (9th Cir. 2003). CBD Obj. at 28. Far from supporting Plaintiffs' argument, however, the Ninth Circuit has explained that *Selkirk Conservation Alliance* requires an agency to "balance need for a comprehensive analysis versus considerations of practicality, while also keeping in mind that use of a larger analysis area can dilute the apparent magnitude of environmental impacts." *Friends of the Wild Swan*, 767 F.3d at 943 (citing *Selkirk Conservation All.*, 336 F.3d at 958-59).

Here, USFS's cumulative effects analysis area encompasses over 328,000 acres surrounding the 39,909-acre Project area, and USFS explained why this area represents the appropriate spatial boundary. SP_041072 (stating subunits "provide the optimal scale for evaluation of seasonal feeding opportunities and landscape patterns of food availability[.]"). The Yale Creek Project is in an entirely different subunit, Henry's Lake # 1, SP_004511-12; SP_041106, and nowhere near being "immediately adjacent" to the Project area, as Plaintiffs claim. CBD Obj. at 28. Further, binding Design Feature 12 prevents Project activities in Henry's Lake #2 until Yale Creek is complete and associated temporary roads decommissioned.

8

SP_004511-12. The Magistrate properly concluded that USFS's analysis is supported by the record, F&R at 58, and the Court should defer to the agency's determination of the appropriate geographic scope. *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1071 (9th Cir. 2002).

> C.     USFS's Climate Analysis Complied with NEPA

USFS conducted a climate analysis proportionate to the Project. *Hapner v. Tidwell*, 621 F.3d 1239, 1245 (9th Cir. 2010) (holding agency considered project's impact on climate "in proportion to its significance"). The Project EA tiered to the Forest Plan Environmental Impact Statement ("EIS"). SP_004372. In the Forest Plan EIS, the Forest Service considered the maximum treatment of the entire Forest and determined it would release "much less" than 1 teragram of carbon a year. SP_001440-41. "In the EIS, USFS concluded that 'even the maximum potential management levels described in the plan alternatives would have a negligible impact on national and global emissions and on forest carbon stocks.'" F&R at 62; SP_001437-38. The Forest Service also completed a qualitative analysis for the Project, determining that while the Project might "contribute a small quantity of carbon," this would be mitigated by a more resilient forest. SP_038618. As explained in the carbon report, and shown below, management activities represent a fraction of the Custer-Gallatin National Forest's carbon emissions compared to wildfire and disease. SP_038616-17.

9



2011 Carbon Storage Reduction Due to 1990-2011 Disturbances

SP_020093.

The Magistrate Judge concluded that the climate analysis for the Project was sufficient under NEPA and distinguishable from *Center for Biological Diversity v. United States Forest Service*, 687 F. Supp. 3d 1053 (D. Mont. 2023) ("*Black Ram*") because (1) the analysis was not copied from another project; (2) the Forest Plan EIS contained a quantitative analysis; and (3) the Project EA's qualitative analysis tiered to that quantitative analysis. F&R at 62-63. CBD objects that *Black Ram* was distinguished in error, arguing that the substance of the climate analysis here was inadequate. CBD Obj. at 32-33. But Plaintiffs have not indicated how the analysis is insufficient, what more should be required, and on what legal authority.

10

Plaintiffs have the burden of proving the agency's decision was arbitrary and capricious, *Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*, 18 F.4th 592, 599 (9th Cir. 2021), and they have not met that burden. The Court should overrule CBD's Objection.

>        D.      USFS Complied with NEPA by Completing an EA.

The Court should reject Gallatin's argument that an EIS should have been prepared because Plaintiffs have not established "substantial questions" as to the significance of the Project's environmental effects. *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1240 (9th Cir. 2005); *see* Defs.' Mem. at 54-57; Defs.' Reply at 28-30. "[I]nformation merely favorable to [Plaintiffs'] position in the NEPA documents does not necessarily raise a substantial question about the significance of the project's environmental effects." *Id.*

First, Gallatin repeats their argument that the Project area is adjacent to Yellowstone and recommended wilderness. Gallatin Obj. at 31. But as the Magistrate Judge concluded, "Plaintiffs have generally pointed to features of the landscape and described some effects, but have not sufficiently explained why this information merits the preparation of an EIS." F&R at 65; *see also* Defs.' Mem. at 55-56.

Second, Gallatin claims that the Project will significantly affect grizzly bears, relying on their expert Dr. Mattson's opinion that habitat conditions in the

area are deficient. Gallatin Obj. at 31-32. As stated in the F&R, Plaintiffs do not explain how this supports the need for an EIS. F&R at 66. USFS determined that individual bears operate at such a large scale that they will be able to find suitable habitat in the surrounding areas and that the Project will benefit grizzly bears in the long-term. SP_004400; SP_041103; SP_041107-08. And, as the Magistrate Judge correctly recognized, a project must have adverse effects on the *species* to warrant an EIS. F&R at 66 (citing *Env't Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1010 (9th Cir. 2006)) ("[I]t does not follow that the presence of some negative effects necessarily rises to the level of demonstrating a significant effect on the environment." *Id.* at 1010-11); *see also* Defs.' Mem. at 56-57. Plaintiffs have shown no such effects.

Third, Gallatin's claim that effects are "likely compounded" by private development is entirely unsupported.[2] Gallatin Obj. at 33. Gallatin cites the Project Biological Opinion as stating that there is a 150-acre parcel of secure habitat that could be developed. *Id.* The quoted sentence in the Biological Opinion, however, continues by stating "but no plans [for development] are known at this time." FWS_000044. USFS considered the impacts of reasonably foreseeable private development. SP_004712-14 (noting most private land "already generally

---

[2] Plaintiffs seem to suggest that the cumulative effects analysis in the EA itself is deficient, Gallatin Obj. at 33, but the EA incorporates all specialist reports by reference, and specialist reports were publicly available. SP_004354.

developed"); SP_041100-02 (discussing effects of private and municipal development). But NEPA does not require USFS to speculate as to projects that are not reasonably foreseeable. 36 C.F.R. § 220.3.

Finally, Gallatin's claims of controversy and uncertainty are unsupported by the record. As stated in the F&R, Plaintiffs "have not pointed to facts in the record that support [their] contention[.]" F&R at 67. Nor do they provide record evidence to support their objections.

USFS complied with NEPA in assessing the potential effects of the Project, and Plaintiffs' objections lack merit. The Court should adopt the F&R finding that USFS fully complied with NEPA.

## II. The Magistrate Judge Correctly Rejected Plaintiffs' NFMA Claims.

The Decision incorporates binding Project Design Features that require compliance with Forest Plan standards for grizzly bear and lynx habitat. SP_004475 (stating the Decision "includes and makes binding the application of the Treatment Matrix, Design Features, Resource Review Checklists, and Monitoring Plan"). Before a timber sale is implemented, USFS must complete Resource Checklists and Conditional NEPA Reporting to U.S. Fish & Wildlife Service ("FWS") to ensure the proposed timber sale and conditions on the ground remain consistent with those standards. SP_004537; SP_004756; SP_005246-47. These binding Design Features, Resource Checklists, and mandatory reporting

13

requirements before contract implementation *are* the Decision framework. Defs.' Mem. at 23-25. They are not optional. In their objections, Plaintiffs merely repeat the same arguments they advanced in their summary judgment briefs, mainly that USFS might exceed the scope of activities the Decision authorizes. But Plaintiffs' speculation is not enough to meet their burden of proof. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1035 (9th Cir. 2020) (requiring plaintiffs to "plainly demonstrate[] that the Forest Service made a clear error in judgment in concluding that a project meets the requirements of the NFMA and relevant Forest Plan."). Magistrate Judge DeSoto properly rejected Plaintiffs' NFMA arguments, F&R at 18-37, and the Court should do the same.

A.    USFS's Decision Is Consistent with Grizzly Bear Standards.

Forest Plan standards limit the amount and timing of temporary reductions to grizzly bear secure habitat below baseline, FW-STD-WLGB-03. SP_000065. Per the plain language of FW-STD-WLGB-03, the standard only applies to the extent "project activities" reduce secure habitat below baseline. *Id.* ("Inside the recovery zone/primary conservation area, project activities shall meet the following conditions for temporary reductions in secure habitat below baseline: . . . ."); *see also* F&R at 18. While recognizing the deference owed to USFS in its interpretation of Forest Plan standards, the Magistrate Judge determined that USFS's interpretation of the standard was also consistent with the plain language.

14

F&R at 21 ("But even without deference, Defendants advance a more compelling, plain language reading of the standard."); 26 ("[T]he plain language of the standard supports Defendants' interpretation."); 35 ("This definition pegs the standard to the timescale of a contract, which is logically consistent-with authorization of projects (such as the South Plateau Project) that last longer than four years and involve multiple contracts."). The Magistrate Judge is correct, and the Court should overrule Plaintiffs' objections to the contrary.

      1.      <u>USFS's Decision Is Consistent with the 1% Standard</u>.

FW-STD-WLGB-03(b) states that the "[t]otal acreage of secure habitat below baseline values within a given bear management unit shall not exceed 1 percent of the acreage in the largest subunit within that bear management unit." SP_000065. USFS calculated the 1% limit for each BMU and identified the maximum acreage below baseline that Project activities can impact at any given time. SP_004433; SP_004511; SP_041106. The Project will not impact secure habitat below baseline in the Plateau BMU, SP_041106; the Project will temporarily reduce secure habitat below baseline in Madison #2 by 0.2%; and treatments in Henry's Lake #2 must be phased or dropped such that the Project will not reduce secure habitat by more than 1,276 acres below baseline at a time. SP_004511-12; SP_041091. *See* Defs.' Reply at 14. Design Feature 12 ensures this limit is not exceeded. SP_004511.

15

CBD argues that the 1% standard does not allow USFS to stage Project activities. CBD Obj. at 17. As recognized by the Magistrate Judge, however, the standard addresses "temporary" reductions in secure habitat, indicating that secure habitat will be reduced and restored over time. F&R at 26. The Magistrate Judge concluded that "the plain language of the standard supports Defendants' interpretation." *Id.* USFS's interpretation of its own standard is also consistent with the Grizzly Bear Conservation Strategy, from which it was derived. SP_045858 (noting allowable temporary reduction "at any one time").

CBD argues that USFS did not analyze the effects of displacing bears to recently treated areas by staging. CBD Obj. at 22. But USFS specifically assessed the impacts of staging the Project over 4 to 6 sales, SP_041092-93, and anticipated that bears would seek out the abundance of untreated habitat in the surrounding landscape. SP_004407 ("Temporary reductions in secure habitat are likely to cause bears to move to areas in their home range with less disturbance"); SP_041208 (showing large blocks of secure habitat adjacent to the Project area).

The record belies CBD's argument that USFS did not explain staging. SP_004343-44 (noting implementation in 4 to 6 sales). "At any one time, only the temporary roads needed for a contract (only a portion of the total 56.8 miles) will exist on the ground[.]" SP_004479. As stated in the Decision, staging means that "temporary roads in one stage will be effectively decommissioned (and secure

habitat restored) before moving onto another stage." SP_004511. The spatial scale of the contract is irrelevant as long as activities comply with the standard and baseline is restored before another contract reduces secure habitat below baseline within the subunit. The Decision authorizes a total reduction in secure habitat below baseline in Henry's Lake #2 of 2,426 acres over the lifetime of the Project, but only 1,276 acres at a time, consistent with the standard. SP_004511-12; SP_041091; *see also* SP_041205 (map).

CBD also repeats their argument that consistency with the 1% standard cannot be verified without knowing the exact location of temporary Project roads. CBD Obj. at 13. USFS determined the location of temporary roads based on the location of existing roads and where temporary Project roads are likely to be needed to access identified treatment units. SP_004344; SP_004339 (map of treatment areas). USFS then assessed the impacts to secure habitat, as shown below:

17



SP_041205. A brief comparison between this map and the treatment map

demonstrates that the secure habitat that will not be temporarily reduced (shown

above in green) coincides with the areas that will not be treated. *Compare*

SP_041205 *with* SP_004339; *see also* SP_006168 (preliminary layout of first two

sales). The temporary roads authorized represent the maximum road mileage for

18

the Project, and USFS analyzed the maximum temporary reduction in secure habitat.[3] SP_004343-45. The binding Design Features, Resource Checklists, and mandatory Conditional NEPA Reporting ensure that the 1% standard is not exceeded before a timber contract is implemented. Defs.' Mem. at 23-25. If a proposed contract would result in exceeding the 1% threshold, the Decision requires USFS to defer those project activities. SP_004541.

Gallatin claims they do not know how the roads will be used, for how long, or how they will be closed. Gallatin Obj. at 18. The record, however, provides the answers. SP_004479 ("Temporary roads will be constructed, used, then closed and obliterated as part of timber sale or stewardship contract."); SP_004512 (temporary roads decommissioned within 4 years); SP_004514 (limiting use of temporary roads to "administrative purposes associated with project activities"); SP_004519 (describing requirements for temporary road obliteration).

Finally, Gallatin claims that there is no information about the amount of secure habitat already below baseline. Gallatin Obj. at 11. This too is incorrect. Defs.' Reply at 14. There are no activities in Madison #1 affecting secure habitat below baseline. SP_007309. The Project will temporarily reduce secure habitat below baseline in Madison #2 by 0.2%. SP_041106. The Project will not impact

---

[3] CBD's unsupported claim that USFS has not disclosed the amount of secure habitat that will be temporarily reduced is wrong. SP_041070; SP_041089-91.

secure habitat below baseline in the Plateau BMU at all. *Id.* And the only project impacting secure habitat below baseline in Henry's Lake BMU is the Yale Creek Project, which will be completed and restored before Project activities begin in that BMU. SP_004511-12; SP_041091. The following demonstrative presented at oral argument assists with visualizing the analysis:



*See also* SP_004513 (Treatment Screening Flowchart – Grizzly Bear). USFS considered the entire BMU in assessing Project consistency with the 1% standard, SP_041091, and Gallatin's argument that some other project may have escaped consideration is pure speculation, which cannot be the grounds for a NFMA

violation. *Or. Nat. Desert Ass'n*, 957 F.3d at 1035 (requiring showing of "clear error of judgment"). To hold otherwise would require USFS to prove the negative. *See* F&R at 24-25 ("Plaintiffs ask USFS to provide evidence of absence, which goes beyond what is required to show compliance . . . .).

    2. <u>USFS's Decision Is Consistent with the Temporary Roads Standard</u>.

FW-STD-WLGB-03(c) states in relevant part that

> [p]roject activities shall not reduce secure habitat below baseline levels for more than four consecutive years. The collective set of temporary roads that affect secure habitat shall be closed to all motorized use after three years. Temporary roads shall be decommissioned such that secure habitat is restored within one year after closure.

SP_000065. Temporary roads are those affiliated with a contract. 36 C.F.R. § 212.1. Under the Decision, temporary roads for each contract must be fully decommissioned within four years, consistent with FW-STD-WLGB(03)(c). SP_004512. The Magistrate Judge correctly determined that USFS's interpretation "pegs the standard to the timescale of a contract, which is logically consistent . . . ." F&R at 35. Conversely, Gallatin's interpretation that the standard requires an entire project to be decommissioned within four years would prohibit all long-term projects, Gallatin Obj. at 20-21, and lacks support in the plain language or the record.

21

The plain language of the FW-STD-WLGB-03 standard addresses the duration of "project activities" not a long-term project. SP_000065 ("Inside the recovery zone/primary conservation area, project activities shall meet the following conditions for temporary reductions in secure habitat below baseline: . . . ."). And USFS's application of the grizzly bear standards to "project activities" as opposed to the entire long-term project, is consistent throughout the Decision. *See* Defs.' Reply at 8-15; SP_004511 (stating that only one project may be "active" in a subunit at a time). Gallatin's interpretation is unsupported by the plain language.

B.      USFS's Decision Is Consistent with Lynx Standards.

Forest Plan standard VEGS2 provides that "[t]imber management projects shall not regenerate more than 15 percent of lynx habitat on [National Forest Service] lands within [a Lynx Analysis Unit] in a ten-year period." SP_000567. Binding Project Design Feature 1 incorporates this standard into the Decision. SP_004508. As described in the Decision, since there are 31,309 acres of lynx habitat on National Forest System lands within the South Madison Lynx Analysis Unit, up to 4,696 acres can be regenerated. SP_004508. Within the Project area, there are 8,787 acres suitable for regeneration, SP_041122, of which 7,737 acres overlap with mapped lynx habitat. SP_041125. The Decision authorizes 5,551 acres of regeneration across the entire Project area, but only 4,600 in mapped lynx habitat. SP_004508. Thus, any of the 951 acres authorized for regeneration in

22

excess of the 4,600 acres in lynx habitat can only be implemented outside of mapped lynx habitat within the Project area. SP_041122. The Decision further limits the size of clearcuts to 40 acres. SP_004478. Resource Checklists and mandatory reporting requirements ensure compliance before contract implementation. SP_004475; SP_004537; SP_004756; SP_005246-47. The Magistrate Judge reasoned that the Decision complied with the Forest Plan standard because "Project Design Feature 1 limits the acres subject to clearcutting within the LAU and [the Decision] contains calculations sufficient to demonstrate compliance with the standard." F&R at 36-37.

CBD objects that "it is impossible to discern compliance" without knowing the exact location of where regeneration harvest will occur, reiterating the same arguments and citing the same cases as their summary judgment briefs. CBD Obj. at 12. But CBD neither identifies erroneous factual findings nor cites authority contrary to the F&R. For the reasons stated in Federal Defendants' summary judgment briefing, Defs.' Mem. at 36-37, Defs.' Reply at 16, and the F&R, the Court should overrule Plaintiffs' objection.[4]

---

[4] Plaintiffs cite no relevant authority for their suggestion that a NFMA violation constitutes a NEPA violation.

USFS's Decision is consistent with Forest Plan standards and NFMA, and Plaintiffs' objections lack merit. The Court should adopt the F&R on Plaintiffs' NFMA claims.

III.    The Magistrate Judge Correctly Rejected Plaintiffs' ESA Claims.

FWS thoroughly examined the effects of the Project on grizzly bears and reasonably concluded that the effects of the Project are not likely to jeopardize grizzly bears. FWS_000047. FWS analyzed the environmental baseline, the effects of the action, and cumulative effects of future state, tribal, local, or private actions reasonably certain to occur in the action area. FWS_000012-47. FWS also recognized that motorized access "may result in some level of adverse effects to individual female grizzly bears and/or dependent offspring," FWS_000048, but—based on the best available science—concluded "the [Project] would not have negative effects on the status of the GYE grizzly bear population." FWS_000053; *id*. (considering the large size of the GYE recovery zone, favorable land management within the recovery zone, and the robust status of the GYE grizzly bear population); FWS_000047 (considering large blocks of wilderness will reduce impacts on grizzly bears).

Plaintiffs lodged two general objections to the F&R with respect to the ESA. First, Plaintiffs contend that the Magistrate Judge erred in upholding FWS's secure habitat standards. Gallatin Obj. at 34-39. Second, Plaintiffs argue that the

24

Magistrate Judge erred in finding FWS' effects analysis is entitled to deference. CBD Obj. at 23-32. Plaintiffs' assertions misconstrue the record evidence and misunderstand the law. The F&R properly rejected Plaintiffs' arguments. F&R at 39-50. This Court should do the same.

    A.    <u>The Secure Habitat Standards Comply with the ESA.</u>

The Magistrate Judge properly found Plaintiffs' challenge to the secure habitat standards unavailing. F&R at 40-41. That finding is based on the best available scientific information. While a larger patch size may provide forage for longer periods of time, grizzly bears use smaller patches of secure habitat for movements, foraging, and other activities. *Id*. at 40; *see also* Defs.' Mem. at 63-65 (studies and data underlying standard); Defs.' Reply at 31-33. Put simply, "different patch sizes offer different analytical benefits." F&R at 40. The Magistrate Judge properly acknowledged this and rejected Plaintiffs' attempt to supplant the agency's expert opinion, finding FWS is owed deference in setting secure habitat standards. *Id*. (citing *All. for the Wild Rockies v. Kreuger*, 950 F. Supp. 2d 1196, 1208-09 (D. Mont. 2013)).

In their objections, Plaintiffs argue there is no "battle of the experts" based on Plaintiffs' view that there is no scientific support for the 10-acre patch size. Gallatin Obj. at 34-39. In support, Plaintiffs offer the same materials and arguments addressed by the Magistrate Judge, and do not seriously grapple with

25

the scientific support underlying the 10-acre patch size. *Compare* Defs.' Reply at 32-33, *with* Defs.' Mem. at 63-65; *see also* Defs.' Reply at 31-35 (addressing Mattson and Schwartz, the Conservation Strategy, and map lacking context). Plaintiffs argue that the 10-acre standard "conveniently allows the agencies to claim conservation benefits for grizzly bears on paper while none exist on the landscape," Gallatin Obj. at 37, yet ignore the breadth of data showing the benefits on the landscape: the GYE grizzly bear population has continued to increase since the 10-acre standard was adopted. Defs.' Mem. at 64-65. Moreover, the 10-acre patch size is just one of several metrics FWS uses for assessing habitat—disturbance and displacement—and is not intended to provide all foraging needs or cover for grizzly bears. Defs.' Reply at 31-32. Plaintiffs offer nothing new, and their arguments are insufficient to show the agencies' use of the 10-acre secure habitat patch size is arbitrary and capricious. *Idaho Conservation League v. Thomas*, 91 F.3d 1345, 1349 (9th Cir. 1996).

B.    FWS's Grizzly Bears Effects Analysis Complied with the ESA.

Plaintiffs make three arguments challenging FWS's analysis of the effects of the Project on grizzly bears. First, Plaintiffs take issue with FWS's focus on secure habitat in its jeopardy determination. CBD Obj. at 24. Second, Plaintiffs quibble with the Design Features' definiteness. CBD Obj. at 27. Third, Plaintiffs dispute FWS's determination of the action area boundaries for the Project. CBD Obj. at 30-

26

32. The Magistrate Judge properly rejected each of these arguments. The Court should do the same.

1. FWS's Jeopardy Determination Is Supported by the Record and Entitled to Deference.

The Magistrate Judge properly found FWS's jeopardy determination is entitled to deference. F&R at 47. This finding is grounded in the longstanding principle that, "so long as the effects of the agency action on a species have been considered and addressed" "FWS is owed deference in deciding how to approach the jeopardy determination." *Id*. at 47 (quoting *Karuk Tribe of Cal. v. U.S. Forest Serv.,* 681 F.3d 1006, 1020 (9th Cir. 2012); citing *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.,* 378 F.3d 1059, 1066-67 (9th Cir. 2004), *amended by* 387 F.3d 968 (9th Cir. 2004)). As demonstrated by the record, FWS met this standard by "employ[ing] a reasonable, justifiable approach" when it focused on secure habitat as the primary consideration in the jeopardy determination. F&R at 47.

Plaintiffs advance three arguments, which should be summarily rejected. First, Plaintiffs complain that the secure habitat analysis relies on "hypothetical road locations" making its effects determination "speculative and unsupported." CBD Obj. at 24. This misunderstands that the agency's secure habitat analysis is just one metric FWS uses for analyzing effects. Defs.' Mem. at 62. FWS also

evaluated the Project's authorization of roads and explained that the actual number of temporary roads constructed is expected to be less due to sideboards, design measures, and standards for maintaining secure habitat levels. Defs.' Mem. at 61. Considering the maximum levels of secure habitat that could be temporarily affected by roads under this framework, FWS concluded the effects of the Project are not likely to jeopardize the continued existence of grizzly bears. *Id*. Further, FWS considered the timing and placement of roads, as the bounds of secure habitat are necessarily determined by road placement. F&R at 47-48. The Biological Assessment mapped temporary roads and the impact to secure habitat, FWS000175-180, and like USFS, FWS considered any expected changes to secure habitat and the effects of all temporary roads constructed at the same time. FWS_000032-33. Thus, the analysis was not purely on mileage or speculation.

Second, FWS did not fail to consider roads as an important aspect of the problem. *Cf.* CBD Obj. at 24-25. "In the context of the ESA, the problem is whether a proposed project will cause jeopardy to a listed species and any effect that is likely to adversely affect the species is plainly an important aspect of this problem." *Klamath-Siskiyou Wildlands Ctr. v. United States Fish & Wildlife Serv.*, No. 1:20-CV-00952-AA, 2022 WL 4599259, at *8 (D. Or. Sept. 30, 2022) (cleaned up). FWS evaluated the maximum milage of temporary roads under the Project and analyzed GIS-identified temporary and proposed routes that could be constructed

28

under the Project to not miss any effects to grizzly bears. Defs.' Mem. at 61-65. FWS, thus, considered these "aspects" and reasonably concluded the effects of the Project are not likely to jeopardize the continued existence of the grizzly bear.[5] FWS_000054.

Third, Plaintiffs argue that the Magistrate Judge erred in finding that FWS had no obligation to consider the timing of the Project's implementation on grizzly bears. CBD Obj. at 24-25. This assertion lacks any basis in fact or law. As a threshold matter, the Magistrate Judge did not make that finding. The Magistrate Judge found that the Forest Service's effects analysis was a reasonable approach, supported in the administrative record, and entitled to deference. F&R at 47-48. Moreover, the record shows USFS tailored Project activities around heavy bear use in early spring/summer and late fall, which FWS considered. SP_004710, SP_005223-24; Defs.' Mem. at 62-63. Thus, the Magistrate Judge's finding is well-supported by Ninth Circuit precedent, which provides FWS deference in how it makes a jeopardy determination so long as the effects of the agency action on a species have been considered and addressed. F&R at 47. Having exceeded this standard, the Court should provide FWS with deference.

---

[5] Plaintiffs' reliance on *Rocky Mountain Wild v. U.S. Fish & Wildlife Serv.*, No. 9:13-cv-00042-DWM, 2014 WL 7176384 (D. Mont. Sept. 29, 2014), fails as that case concerned a challenge under ESA Section 4—not Section 7 as challenged here—and even though exact road placement could change, FWS's no jeopardy determination will not given the Project's parameters.

2.    FWS Properly Considered the Design Features as Integral Parts of the Project.

The Magistrate Judge correctly rejected Plaintiffs' contention that the Project relies on "unspecified" "mitigation measures." F&R at 49-50. The Design Features are "integral parts of the agency action that the Project Biological Opinion assesses." *Id*. at 50. Further—even if the Design Features were mitigation measures (which they are not)—the Magistrate Judge found they are "undoubtedly of sufficient definiteness and manifest a clear commitment of agency resources." *Id*.

Plaintiffs argue that the F&R is inconsistent with the Ninth Circuit's holding in *Center for Biological Diversity v. Bernhardt*, 982 F.3d 723, 743 (9th Cir. 2020). CBD Obj. at 26. But in *Bernhardt*, the Ninth Circuit rejected proposed mitigation measures addressed in a biological opinion because they did not constitute a "clear, definite commitment of resources." F&R at 49 (quoting *Ctr. for Biological Diversity*, 982 F.3d at 748). Those proposed mitigation measures referenced "possible" strategies, without selecting a measure from the list or committing the action agency to carrying out any measures. *Ctr. for Biological Diversity*, 982 F.3d at 746. In contrast, the "possible options" Plaintiffs refer to here are treatments and associated temporary project roads that could either be dropped or done in stages, but in any event, the number of temporary roads at any given time would be

30

limited.[6] SP_005221; *cf.* CBD Obj. at 26. Put simply, the cap on the number of temporary roads under the Project is not an option. The Design Features are binding on the Forest Service and contain requirements at every stage of the Project. Defs.' Reply at 40; Defs.' Mem. at 67.[7] This is a "far cry" from the uncertain measures in *Bernhardt*. F&R at 50. Thus, the Court should reject Plaintiffs' objection.

3.   FWS's Action Area Is Supported by the Record and Entitled to Deference.

The Magistrate Judge correctly rejected Plaintiffs' arguments that the Yale Creek Project is within the Project's action area and should have been considered in FWS's effects analysis. F&R at 45-46. The Yale Creek Project is "conclusively outside the action area, as determined by FWS" therefore, the agency was not required to consider effects of the Project there. *Id.* at 45. That determination is within FWS's discretion, supported by the record, and is afforded deference. *Id.*; *see Friends of the Wild Swan*, 767 F.3d at 950 ("The choice of appropriate action

---

[6] Thus, Plaintiffs' contention that "it is impossible" for FWS to engage in a secure habitat analysis necessarily also fails as the Project's Design Features ensure the standards are met. CBD Obj. at 24.

[7] For this reason, Plaintiffs' arguments regarding Henry's Lake fail. *See* CBD Obj. at 26; *see also* Defs.' Mem. at 69-70.

areas requires application of scientific methodology and, as such, is within the agency's discretion.") (cleaned up).

In their objections, Plaintiffs argue that the Magistrate Judge failed to consider *Native Ecosystems Council v. Dombeck,* 304 F.3d 886 (9th Cir. 2002), which requires that an agency's choice of analysis area must be supported. CBD Obj. at 30-32. In *Dombeck*, the Ninth Circuit found that the record did not contain any indication that the Forest Service chose an action area that corresponded with the ESA's requirement to consider "all areas to be affected directly or indirectly" by the action. 304 F.3d at 902-903. Here, the Magistrate Judge evaluated the agency's rationale and record support for why the Yale Creek Project is not part of the action area. F&R at 44-46; *see id*. at 45 (analyzing the Biological Opinion's discussion of effects to grizzly bears). The Biological Assessment explains that the Project area lies at the intersection of the Madison #2, Henry's Lake #2, and Plateau #1 Subunits. SP_005112. Because the subunits provide the optimal scale for evaluating seasonal feeding opportunities and landscape patterns of food availability, the spatial boundary for analyzing the effects to grizzly bears is the area that consists of the three Subunits that are intersected by the proposed fuels and forest health treatments and associated activities including access management changes. *Id*. Although the Yale Creek Project is outside the action area, it shares the larger Herny's Lake BMU with the Project. FWS explained that under the Project,

32

Yale Creek Project activities must be completed, and temporary roads decommissioned prior to any Project activities affecting secure habitat below baseline in the Henry's Lake #2 subunit begin. Defs.' Mem. at 69. This scientific methodology setting the action area for the Project is supported by the record and, accordingly, falls within FWS's discretion. *Friends of the Wild Swan*, 767 F.3d at 950. The Court should reject Plaintiffs' assertions to the contrary.

## CONCLUSION

For the reasons stated above, in Federal Defendants' summary judgment briefs, and the F&R, the Court should adopt Magistrate Judge DeSoto's F&R in full and grant summary judgment in favor of Federal Defendants.

Respectfully submitted on this 5th day of May, 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Reade E. Wilson*
READE E. WILSON, Trial Attorney
Natural Resources Section

*/s/ Christian H. Carrara*
CHRISTIAN H. CARRARA, Trial Attorney
Wildlife and Marine Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0299 (Wilson)
Tel: (202) 305-0217 (Carrara)
Fax: (202) 305-0275

Email: reade.wilson@usdoj.gov
Email: christian.carrara@usdoj.gov

KURT G. ALME
United States Attorney
*Attorneys for Federal Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 72.3(b), I hereby certify that this brief complies with the 6,500-word limit for responses to objections. Excluding the caption, tables of contents and authorities, signature block, and certificate of compliance, this brief contains 6,486 words.

*/s/ Reade E. Wilson*
Reade E. Wilson, Trial Attorney
reade.wilson@usdoj.gov
